| | |
|---|---|
| Judge: | Christopher M. Alston |
| Chapter | 7 |
| Hearing Date: | **July 26, 2019** |
| Hearing Time: | 9:30 a.m. |
| Hearing Place: | 7206 U.S. Courthouse |
| | 700 Stewart St |
| | Seattle WA 98101-1271 |
| **Response Date:** | **July 19, 2019** |

# UNITED STATES BANKRUPTCY COURT

## FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

**NOAH N. KEABLES**

Debtor.

Chapter 7

No. 14-11665-CMA

TRUSTEE'S RESPONSE TO ORDER TO SHOW CAUSE

I was appointed as the Chapter 7 trustee in this case on March 7, 2014. The Court entered an order on July 2, 2019 requiring me to show cause why this case should not be closed because of the amount of elapsed time in which there was no activity on the docket. The Court also had indicated concern about whether I had a practice of keeping cases open in the hope that the value of the debtor's house would appreciate sufficiently to become an equity sale. This is my response to those concerns.

1.      **I do not have a policy of keeping cases open simply to allow real properties to appreciate.**

This is the simpler question to answer. I can certainly understand the Court's concern about the passage of time in the case with no action on the docket, but I do not and have never kept cases open simply to reap the benefit of appreciation over time. There are several reasons for this.

In the first place, although looking back over the last several years it appears that real property appreciation is inexorable, there are no guarantees that it will either continue or be steady into the future. In the 28+ years that I have been on the panel, I have seen at least three periods of persistent  and in one case,  precipitous decline in real property values in the Seattle metropolitan area – in the early 1990's after

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103
(206) 623-4382

the Iraq invasion of Kuwait; after the dot.com bust and 9/11 when Boeing laid off 30,000+ workers; and for a prolonged period from 2007 through almost 2012 after the collapse of the home loan bubble. None of these periods was foreseeable immediately prior to its arrival.

Secondly, keeping a case open but doing nothing on it still requires a not-insignificant amount of administrative effort of which the Court may not be aware – as a panel trustee, I am required by the UST to perform quarterly reviews of our cases and file annual detailed reports. In addition, the UST asks us to provide more detailed reports on our older cases at least once a year and sometimes more frequently than that. While the case is open, there is often a continual set of issues relating to the house raised by debtors, their counsel, lenders and sometimes potential buyers. The possibility of appreciation is simply too remote to justify the effort of keep a case open simply for that reason.

**2.     As a general matter, I do keep cases open for many reasons other than the hope of appreciation.**

There are numerous reasons why I might keep a case open without a lot of activity showing on the docket.

In the first place, since property values are subjective at best, I would normally expect to market a property for at least 120 days (and longer if it includes the November to January holiday of slow marketing activity), to allow time for the market to set the price.

Secondly, sometimes, the debtor may have an unrelated issue that requires me to keep the case open – for example, it might be a personal injury case, or a title issue relating to the property.

Third, in some cases (such as this one) I may have difficulty getting basic information from the debtor or from a lender or some third party.

Fourth, in some cases (also as in this one) there may be difficulties relating to marketing a particular property, such as the property's appearance, special needs of the debtor or his/her family.

Fifth, in almost every short sale case in which the debtor is not surrendering the property, I make a judgment about whether the debtor is likely to have the economic strength to service the secured debt. At

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103
(206) 623-4382

the beginning of the last cycle in 2009-10, I had a few debtors who had expensive houses that were several hundred thousand dollars underwater, but they had lucrative positions with high-tech companies and had the financial strength post-discharge to wait out the real estate cycle, or negotiate with their lender. In those cases I filed NDRs almost immediately.

In other cases where the debtor is behind in their payments and perhaps is unemployed, I would hold the case open to see what would happen. If after a period of time it was clear that they had recovered and were current on their payments, I would file an NDR.

For a period of time until fairly recently, debtor's counsel would routinely assert that the debtors intended to do a loan modification to allow them to keep the house. In those cases, I would ask for documentation that they had actually applied for the loan modification. If they did, I would wait to see if they received it. If they supplied me with documentation that they had received it, I would wait for a few months to see if they could meet the terms of the modification. If they could I would file an NDR; if not, I would take steps to list the property.

In other cases, after a period of time, the debtor would decide that he or she would like to make some money by doing a short sale themselves. In that case, once they listed their property, I would take action to complete the short sale on behalf of their creditors.

**3.      In this case, there were multiple and recurring reasons to keep the case open.**

This case was filed on March 7, 2014. The debtor scheduled the house at a value of $272,754, subject to an encumbrance held by Washington Federal Bank in the amount of $259,376. The 341 hearing was held on April 10, 2014. At the hearing, the debtor Noah Keables testified that he was surrendering the house as he had scheduled, and mentioned that his soon to be ex-wife was living there and had agreed at their divorce mediation that she would also file bankruptcy and agree to surrender the house; however, he cautioned that he didn't know from day-to-day what her position was going to be, and his counsel indicated that Ms. Keables had changed her mind several times during the course of preparing the schedules about whether she would file a joint petition or file separately and whether she would agree to surrender the house.

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103
(206) 623-4382

This was not an uncommon fact pattern at the time, so I proceeded to hire my realtor, Rich Kim. The order approving his employment was signed by Judge Barreca on May 7, 2014 (dkt #14).

At some point in late April or early May, before he had been formally hired, Mr. Kim reported that Ms. Keables' divorce attorney, Peggy Fraychineaud Gross had contacted him (Exhibit "A") and stated that she (Ms. Keables) had received the house by virtue of a CR2A agreement and that he (Mr. Kim) could not sell it. As a result, on May 2 I sent an email (Exhibit "B") to a Ms. Gross indicating why it was still an asset of the bankruptcy estate.

On May 21, 2014, I received by email a letter from Ms. Keables (Exhibit "C"), indicating that the house had been in her family for three generations[1] and she was counting on it to live in with her five children, and asking me to not try to sell the house and saying that she would be forced to retain an attorney.

On May 21, 2014 I was also contacted by Taryn Darling-Hill, a bankruptcy attorney representing Ms. Keables, wanting to know more about the sale and whether the estate had been able to obtain a deficiency waiver from Washington Federal. After an extensive email chain (Ex. "E"), we agreed on June 1 that we would file a separate motion for approval of the sale if there was a deficiency on the sale and the bank had not waived the deficiency. We then put the property on the market.

Apparently Ms. Keables was not satisfied with this result because on July 31, 2014 I was contacted by email from Keith Eldridge (Exhibit "F"), a reporter for KOMO-TV who wanted to know why Ms. Keables' house was being sold by a bankruptcy trustee. I believe I talked to him and told him why it was happening in this case and I don't think he ever did a story on it.

In November of 2014, Taryn Darling-Hill notified me and Rich Kim that someone had shown up without an appointment on Ms. Keables' porch and tried to use a key from the keybox to open the door. (Exhibit "G").

Finally, on January 10, 2015, I signed an offer to sell the house to a Nick Martyn for $175,000 (Exhibit "H"). On January 24, 2015, this offer was terminated after Martyn did an inspection (Exhibit "I").

---

[1] Although this may be true, it appears that the debtor and Ms. Keables purchased it for market value, paying a full Real Estate Excise Tax on it (Exhibit "D").

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103
(206) 623-4382

This offer would have been a short sale by about $85,000, assuming that Ms. Keables had been making the payments.

At about this time, I hired Rory Livesey as the attorney for the estate to obtain approval of the Martyn offer to sell. The order approving his employment was entered on February 5, 2015 (dkt# 26), but by that time Martyn had inspected the house and had withdrawn his offer.

On April 25, 2015, I signed an offer from Rehab Designers LLC to purchase the house for $189,950 (Exhibit "J"). This would have been a short sale to Washington Federal by about $70,000 assuming Ms. Keables had been making the payments. However, on March 17, 2015 Washington Federal filed a motion for relief from stay indicating that she was delinquent for all payments after May 1, 2014 (dkt # 29). Relief was granted on April 24, 2015 (dkt #35).

As Mr. Kim's declaration explains in more detail, when he tried to get payoff figures from Washington Federal, they refused on the grounds that they believed the estate did not have an interest in the property. This was very strange since the secured lender does not, in my experience[2], try to make an independent determination about title in a bankruptcy. In a further curious development, unknown to us at the time, Washington Federal, according to Ms. Keables, ". . . stepped in. Washington Federal assisted me with getting the Quit Claim Deed and Excise Tax Affidavit for the transfer of the house to my sole ownership, as well as a modified loan . . ." (Letter to Court, filed as Document 5 in adversary case no. 19-01060). None of this, including the filing of the Quit Claim Deed was known to me or, I believe, to Mr. Kim until this letter was filed on June 13, 2019.

In any event, Mr. Kim continued to try to establish communication with Washington Federal but could not get past their insistence that the estate had no interest in the property. Of course, we could have taken a more aggressive position with Washington Federal, but since it is a small local bank, a more aggressive approach would not be likely ultimately to yield approval of a short sale. Accordingly, we

---

[2]     By around this time, I had closed 311 short sales since September of 2009, for a total property value of $115,971,694 and had obtained in the process, carve-outs totaling in excess of $7.6 million (Declaration of Edmund J. Wood, dkt #49 in *In re Rausch*, case no. 10-11381 CMA, p. 1-2).

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103
(206) 623-4382

waited to see if Ms. Keables was going to be able to continue to make the payments, since the motion for relief from stay had shown that she had not made payments since May of 2014.

The event which changed the landscape in this case was when Ms. Keables listed the house for sale, indicating her willingness to move. The Multiple Listing Service documentation shows that it was listed on April 4, 2019 (Exhibit "K"). Mr. Kim then received a call from the Multiple Listing Service noting that a new listing had been filed on the same house as his existing listing. This was the first time that we knew Ms. Keables had decided to sell the house.

**4.      Going forward, the house should be listed for sale and processed as an equity sale.**

Although as pointed out above, setting a market value for real estate can only be definitively set by the market, Mr. Kim has told me it may sell for enough to pay the costs of sale, costs of administration and 50% of the filed claims, which total about $30,800. I would propose allowing the estate to market it for 120 days which should be adequate, assuming full cooperation from Ms. Keables, to determine whether an equity sale is feasible.

Declared under Penalty of Perjury under the laws of the State of Washington this 18th day of July, 2019.

/s/  Edmund J. Wood
Edmund J. Wood, WSBA #3695
Chapter 7 trustee

**Wood & Jones, P.S.**
303 N. 67th Street
Seattle WA 98103
(206) 623-4382

# Exhibit A

Mr. Witt:

Pursuant to our telephone discussion, I am requesting the name and contact information for Noah Keables' bankruptcy attorney and trustee. As I advised you, my client, Pamela Keables nor I have received any bankruptcy paperwork. The parties mediated this case and settled the issues which is memorialized and signed by all parties. Pamela was awarded the house in the distribution of assets and the debt on the house. The house is upside down, but Pamela is planning on keeping the home and the payments are not in default. Pamela has five children residing with her in the home and has not filed bankruptcy. She does not intend to surrender the home. I have also spoken with Noah's dissolution attorney.

Thank you for your courtesies.

Sincerely,


Peggy Fraychineaud Gross
Attorney at Law

LAW OFFICE OF
PEGGY FRAYCHINEAUD GROSS
1702 Commercial Street
Steilacoom WA 98388
(253) 272-7152-Phone
(253) 272-2465-Fax

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and as such is PRIVILEGED and CONFIDENTIAL. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, this serves as notice to you that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please delete the original message and any attachments, as well as all copies thereof, and notify me immediately via e-mail at pfgross@pfgrosslaw.com or telephone me at 253-272-7152.

# Exhibit B

**From:** ewood1 <ewood1@aol.com>
  **To:** PFGross <PFGross@pfgrosslaw.com>
  **Cc:** richkim <richkim@luminbrokers.com>
**Subject:** 14-11665 Keables
  **Date:** Fri, May 2, 2014 2:02 pm

Ms. Gross -- I got your email address from Rich Kim, the realtor for this bankruptcy estate. I'm the chapter 7 trustee for this case, and it appears that there is a lack of understanding among several people about the effect of the bankruptcy.

Under the Federal Bankruptcy Code, in a community property state, the filing of a petition by either spouse brings not only the separate spouse's assets, but also all of the community assets into the bankruptcy. As a result, because of the Supremacy Clause, a state court judge has no authority to take any action to affect pre-petition assets of the community. This means that, like it or not, the community house is an asset of the bankruptcy estate, and Ms. Keables has no ability to affect this. Because the debtor has indicated an intention to surrender the house and I believe I can obtain some significant funds for the community creditors by selling it on a short sale, I intend to do just that.

If you want to call to talk about it, I'd be happy to do it, but I'm leaving town for a week tomorrow, so give me a call on the 12th or later.

Edmund J. Wood

303 N. 67th Street
Seattle WA 98103

Tel: (206) 623-4382
Fax: (206) 224-4895

Exhibit C

**From:** Ed Wood <ewood1@aol.com>
**To:** rory <rory@liveslaw.com>
**Subject:** Fwd: Noah Keables Case No. 14-11665-MLB
**Date:** Mon, Jul 1, 2019 2:08 pm
**Attachments:** Ex. A _ 1 of 2.jpg (642K), Ex. A _ 2 of 2.jpg (785K), Ex. B _ 1 of 2.jpg (404K), Ex. B _ 2 of 2.jpg (179K)

---

Edmund J. Wood

303 N. 67th Street
Seattle WA 98103

Tel: (206) 623-4382
Fax: (206) 224-4895


-----Original Message-----
From: Pamela Keables <pamelas_closet_usa@yahoo.com>
To: ewood1@aol.com <ewood1@aol.com>
Sent: Wed, May 21, 2014 2:51 pm
Subject: Noah Keables Case No. 14-11665-MLB

# Pamela Keables

29905 8th Place South
Federal Way, WA 98003
(253) 332-4078

pamelas_closet_usa@yahoo.com


May 21, 2014

RE:     Noah Keables Bankruptcy
        Case No. 14-11665-MLB

Dear Edmund Wood:

I am writing you because I want to still believe that justice does exist even though a nightmare has manifested itself recently in my only real encounters with the justice system. You see, I am going to be rendered homeless with my five children because I had no idea that my soon to be ex-husband claimed a house that has been in my family for three generations as his asset in bankruptcy. A house that he agreed just days earlier in mediation would be mine in our divorce in a binding CR 2A agreement. He agreed to cooperate with transferring it, but instead of fulfilling his promise, he filed bankruptcy to apparently make sure that I lost the only real asset that I would own.

Aside from the sentimental value, the equity I would accrue over the years was going to be my only real pension; I would be able to cash out on the equity 20 or 30 years from now after I was able to raise my children in the home. I would have also had the choice to pass it on to one of my children if I wanted to. I agreed to take less in the divorce so I could keep the house. I had not missed a payment even after he left us and the bank already committed to working with me to make the payments even easier once he removed his name from the title. The mortgage is not in arrears and the creditor is being properly and timely paid by me, yet I am going to lose my family home because he files for bankruptcy? It is my understanding that I would not be in this predicament if he had abided by the

terms of the agreement and transferred title to me before he filed for bankruptcy, yet my children and I are punished. How is any of this just or fair?

I enclose the only notices I received regarding this bankruptcy. The first notice (Ex. A) says nothing about me or any impact to me by him filing for bankruptcy. In fact, it seems to state that I should do nothing unless you requested. The second notice (Ex. B) that came to me spoke of back child support and mentioned nothing about my home being at stake even though I am listed as a co-debtor. Noah did not owe back child support so there was no need for me to respond.

It was not until April 14th at 4:30 pm that I was informed by Noah that my house was involved in this bankruptcy. The text of the email to me was as follows:

> "I was in bankruptcy court last Thursday. There is a Federal Trustee that Administrates the proceeding. His job was to verify my information and make sure I understood everything that I signed. One of the questions was what I am going to do with the house. I told him that I am surrendering it. He asked if you were in agreement with this. I told him that it was my understanding that you'd be filing bankruptcy too and letting the house go, but that I didn't want to answer definitively for you. He requested contact information and I gave him your email address. If he hasn't emailed you yet, he will be soon."

I had no intention of filing for bankruptcy and always intended to keep my house. Noah apparently neglected to tell you of his promise to let me keep the house in the divorce and misled you on my intentions. Nobody has asked me what I want to do with the house, the first email I received after April 14th noted that the decision was already made to sell my house, and I have been frantically trying to get the house removed from these proceedings through my divorce attorney, but was told that the trustee insists that it be sold.

I have been told that I need to hire a bankruptcy attorney and that it will cost me $10,000 in attorney's fees to fight this. I do not have that kind of money. I implore you to please put a stop to this travesty of justice and restore my faith that the right thing can be done by stopping the sale of my home.

Thank you.

Sincerely,


Pamela Keables

Enc.

---

| 4Attached Images |
| --- |



# Exhibit D

When recorded return to:

**Mr. and Mrs. Noah Keables**
29905 - 8th Place South
Federal Way, WA 98003

**20070402000363**
PACIFIC NW TIT WD          33.00
PAGE001 OF 002
04/02/2007 09:52
KING COUNTY, WA

Filed for Record at Request of
SeaTac Escrow, Inc.
Escrow Number: E070098ND

**E2275446**
04/02/2007 09:43
KING COUNTY, WA
TAX                  $5,113.60
SALE            $287,000.00     PAGE001 OF 001

## Statutory Warranty Deed

**THE GRANTOR** Dorothea M. McDaniel, an unmarried individual for and in consideration of TEN DOLLARS AND OTHER GOOD AND VALUABLE CONSIDERATION in hand paid, conveys and warrants to Noah N. Keables and Pamela R. Keables, husband and wife the following described real estate, situated in the County of King, State of Washington

Abbreviated Legal: Lot 8, Blk 3, Marine Hills No. 1, Vol. 56, pgs 98-99 King Co., Wa.

**For Full Legal See Attached Exhibit "A"**

Tax Parcel Number(s): 515160-0115-05

FILED BY PNWT

645520.2

(5)33

Dated **March 26, 2007**

*Dorothea M. McDaniel*
Dorothea M. McDaniel

STATE OF _____Washington_____ }
COUNTY OF _____King_____ } SS:

I certify that I know or have satisfactory evidence that **Dorothea M. McDaniel**

the person who appeared before me, and said person acknowledged that _____She_____
signed this instrument and acknowledge it to be ___her___ free and voluntary act for the
uses and purposes mentioned in this instrument.

Dated: **3-29-07**

*Wendy Beyke*

Notary Public in and for the State of _____Washington_____
Residing at ___Auburn___
My appointment expires: ___1/15/09___

WENDY BEYKE
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
JANUARY 15, 2009

LPB 10-05(i-I)
Page 1 of 2

## EXHIBIT A

Lot 8, Block 3, Marine Hills No. 1, according to the plat thereof recorded in Volume 56 of Plats, pages 98 and 99, in King County, Washington.

Subject to: Restrictions contained on the face of the plat. Restrictions contained in Declaration of Protective Restrictions under rec#4663319. Right of the public to make necessary slopes for cuts and fills upon said premises in the reasonable original grading of streets, avenues, alleys and roads as dedicated in the plat.

Unofficial Copy

# Exhibit E

**From:** Rich Kim <RichKim@LuminBrokers.com>
**To:** Taryn M. Darling Hill <taryn@impactlawgroup.com>; ewood1@aol.com <ewood1@aol.com>
**Subject:** RE: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003
**Date:** Mon, Jun 1, 2015 11:56 am

I just wanted to follow up to the e-mail below to confirm that we will receive the requested documents so that we may proceed forward. Thank you.


**Rich Kim**

*Designated Real Estate and Mortgage Broker*

*Founder and Principal*

**Lumin Brokers**

*Brighter Real Estate and Mortgage Solutions*

5400 Carillon Point

Kirkland, WA 98033

Office Phone: 206-888-8888

Office Fax: 888-833-4123

Mobile: 425-301-1111

E-Fax: 425-484-8880

E-Mail: RichKim@LuminBrokers.com

www.LuminBrokers.com

WA Real Estate Broker License: 50106

WA Real Estate Brokerage License: 9607

WA Mortgage Broker License: MLO-121257

WA Mortgage Brokerage License: MB-120818


**From:** Taryn M. Darling Hill [mailto:taryn@impactlawgroup.com]
**Sent:** Thursday, May 28, 2015 4:49 PM
**To:** ewood1@aol.com; Rich Kim
**Subject:** Re: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003

Yes – thanks Ed – I think that would do it. So long as we have agreement that you will file a new motion for court approval so Ms. Keables can object if deficiency is not waived – I would recommend to her that she sign the authorization.

Can you confirm you are willing to commit to a new motion if no deficiency is waived?

Once confirmed, I will request that client authorizes for you Rich.

Thank you,

TARYN M. DARLING HILL
IMPACTLAWGROUP PLLC

1325 4ᵗʰ AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
P 206.792.5230
F 206.452.0655
taryn@impactlawgroup.com

This e-mail may contain confidential information that is legally privileged. The information is solely for the use of the addressee(s) named above. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this information is strictly prohibited. If you have received this e-mail in error, please notify us by return e-mail and delete this message. Thank you.

---

**From:** "ewood1@aol.com" <ewood1@aol.com>
**Date:** Tuesday, May 26, 2015 at 12:35 PM
**To:** "richkim@luminbrokers.com" <richkim@luminbrokers.com>, Taryn Darling Hill <taryn@impactlawgroup.com>
**Subject:** Re: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003

Isn't this kind of a chicken and egg problem? Ms. Keables technically has no control over the property, since the community interest is wholly an asset of the bankruptcy estate; I'd love to help her anyway, but it looks like Rich can't do it without her consent; but if the lender won't agree, I might be forced to sell it anyway. How about if we stipulate that if consent to waiving the deficiency is not given, we would need to file a new motion for court approval, to allow her to raise the issue with the bankruptcy judge?

Edmund J. Wood

303 N. 67th Street
Seattle WA 98103

Tel: (206) 623-4382
Fax: (206) 224-4895

-----Original Message-----
From: Rich Kim <RichKim@LuminBrokers.com>
To: Taryn M. Darling Hill <taryn@impactlawgroup.com>; ewood1 <ewood1@aol.com>
Sent: Fri, May 22, 2015 10:28 am
Subject: RE: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003

I cannot speak on behalf of the trustee and I will defer to him for response. However, I can state that we are fully aware of the necessity for full deficiency waiver on behalf of Ms. Keables but unfortunately cannot continue to negotiate this on her behalf without the Authorization.

**Rich Kim**

*Designated Real Estate and Mortgage Broker*

*Founder and Principal*

**Lumin Brokers**

*Brighter Real Estate and Mortgage Solutions*

5400 Carillon Point

Kirkland, WA 98033

Office Phone: 206-888-8888

Office Fax: 888-833-4123

Mobile: 425-301-1111

E-Fax: 425-484-8880

E-Mail: RichKim@LuminBrokers.com

www.LuminBrokers.com

WA Real Estate Broker License: 50106

WA Real Estate Brokerage License: 9607

WA Mortgage Broker License: MLO-121257

WA Mortgage Brokerage License: MB-120818

**From:** Taryn M. Darling Hill [mailto:taryn@impactlawgroup.com]
**Sent:** Friday, May 22, 2015 10:23 AM
**To:** Rich Kim; ewood1@aol.com
**Subject:** Re: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003

Thank you for your response Rich. Would the Trustee agree to make court approval contingent upon waiver of deficiency? Or alternatively, agree not to close unless and until deficiency is waived?

I know the sale is contingent upon Court approval, but it also looks like close could take place within 5 days of lien holder approval – and ostensibly if the lien holder approves without deficiency, the sale could close – which as expressed would be a terrible result for Ms. Keables.

Please let us know – and so long as we have assurances that the sale will not proceed unless deficiency is waived or Ms. Keables has opportunity to respond to a motion seeking court approval prior to close I will encourage her to execute the authorization form to assist in your communications with the lender.

TARYN M. DARLING HILL
IMPACTLAWGROUP PLLC

1325 4th AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
P 206.792.5230
F 206.452.0655
taryn@impactlawgroup.com

This e-mail may contain confidential information that is legally privileged. The information is solely for the use of the addressee(s) named above. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this information is strictly prohibited. If you have received this e-mail in error, please notify us by return e-mail and delete this message. Thank you.

---

**From:** "richkim@luminbrokers.com" <richkim@luminbrokers.com>
**Date:** Thursday, May 21, 2015 at 5:41 PM
**To:** Taryn Darling Hill <taryn@impactlawgroup.com>, "ewood1@aol.com" <ewood1@aol.com>
**Subject:** RE: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003

We are in the process of speaking with Washington Federal and I am clearly aware of the need to obtain full deficiency waiver on Ms. Keable's behalf. Although I did request all documents at once for the sake of expediency, I am really only in need of the Authorization to be able to proceed. As I am sure that you are aware, providing this document would not obligate her to agree to any sale terms and is simply to facilitate in the process of allowing discussions with the lienholder. Thank you.

**Rich Kim**

*Designated Real Estate and Mortgage Broker*

*Founder and Principal*

**Lumin Brokers**

*Brighter Real Estate and Mortgage Solutions*

5400 Carillon Point

Kirkland, WA 98033

Office Phone: 206-888-8888

Office Fax: 888-833-4123

Mobile: 425-301-1111

E-Fax: 425-484-8880

E-Mail: RichKim@LuminBrokers.com

www.LuminBrokers.com

WA Real Estate Broker License: 50106

WA Real Estate Brokerage License: 9607

WA Mortgage Broker License: MLO-121257

WA Mortgage Brokerage License: MB-120818

---

**From:** Taryn M. Darling Hill [mailto:taryn@impactlawgroup.com]
**Sent:** Thursday, May 21, 2015 4:21 PM
**To:** Rich Kim; ewood1@aol.com
**Subject:** FW: Documents for Signatures - Keables / LLC - RE: 29905 8th Pl S, Federal Way, WA 98003


Dear Ed and Rich,


Ms. Keables has forwarded along the P&S and the requisite documents for her signature. However, at this time I cannot encourage her to sign the documents because it appears as though the sale will be short approximately $71,000 and there is no indication that the Lender will waive deficiency.


As you may recall, Ms. Keables is not the debtor in the bankruptcy, and so she will not obtain the benefit of the discharge. If the home is short sold, and the Lender does not waive deficiency, it may continue to pursue her for the deficiency. This is an untenable situation for a single mother.

On the other hand, if the home proceeds to foreclosure, under Washington's Deed of Trust Statute, she will have no liability for the deficiency. Given the clear benefit that a foreclosure will provide to her as compared to a short sale that does not include a deficiency waiver, I cannot recommend that she allows the short-sale to proceed unopposed. As her liability in the short-sale context will largely eclipse any benefit to the creditors of the estate – the Bankruptcy Court may very well agree with her that the sale should not proceed.

Are you working on a waiver of deficiency from Washington Federal? If you are able to obtain express assurance from the lender that it will waive deficiency, and we can make Court approval and closing contingent upon its agreement, then my concerns will be remedied.

Please advise.

Best regards,

TARYN M. DARLING HILL
IMPACTLAWGROUP PLLC

1325 4th AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
P 206.792.5230
F 206.452.0655
taryn@impactlawgroup.com

This e-mail may contain confidential information that is legally privileged. The information is solely for the use of the addressee(s) named above. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this information is strictly prohibited. If you have received this e-mail in error, please notify us by return e-mail and delete this message. Thank you.

On Tuesday, May 12, 2015 1:48 PM, Rich Kim <RichKim@LuminBrokers.com> wrote:

Bk Case #14-11665-MLB
Property Address: 29905 8th Pl S, Federal Way, WA 98003
Seller(s): Pamela Keables , Co-Title Holder & Borrower - Not Part of BK
Buyer(s): Rehab Designers, LLC

Pamela -

Per our conversation, please see the attached documents for signatures. In most documents you will be signing in the Titleholder section but on the listing agreement just go ahead and sign as a Seller since a titleholder field does not exist. Thank you.

Rich Kim
**Lumin Brokers -** Short Sale Department
*Brighter Real Estate and Mortgage Solutions*
5400 Carillon Point
Kirkland, WA 98033
**Short Sale Phone:** 888-888-1321
**Short Sale Fax:** 888-710-8080
**Short Sale E-Mail:**ShortSale@LuminBrokers.com
**Direct/Mobile:** (425) 301-1111

# Exhibit F

**From:** Ed Wood <ewood1@aol.com>
**To:** rory <rory@liveslaw.com>
**Subject:** Fwd: KOMO-TV NEWS QUESTION about 29905 8th pl S in Federal Way
**Date:** Mon, Jul 1, 2019 2:11 pm

Edmund J. Wood

303 N. 67th Street
Seattle WA 98103

Tel: (206) 623-4382
Fax: (206) 224-4895

-----Original Message-----
From: Keith Eldridge <KeithE@komotv.com>
To: ewood1@aol.com <ewood1@aol.com>
Sent: Thu, Jul 31, 2014 11:26 am
Subject: KOMO-TV NEWS QUESTION about 29905 8th pl S in Federal Way

Mr. Wood, we're doing a story today on the circumstances surrounding the sale of this home belonging to Pamela
Keables.  Are you able to give any input as to why it's on the market?  I understand it stems from bankruptcy filing by
Noah Keables. Thanks

Keith Eldridge
KOMO-TV News
206-795-9961 (cell)

# Exhibit G

**From:** Ed Wood <ewood1@aol.com>
**To:** rory <rory@liveslaw.com>
**Subject:** Fwd: Keables - Someone just showed up at the house
**Date:** Mon, Jul 1, 2019 2:13 pm

Edmund J. Wood

303 N. 67th Street
Seattle WA 98103

Tel: (206) 623-4382
Fax: (206) 224-4895

-----Original Message-----
From: Taryn M. Darling Hill <taryn@impactlawgroup.com>
To: richkim@luminbrokers.com <richkim@luminbrokers.com>; ewood1@aol.com <ewood1@aol.com>
Sent: Mon, Nov 3, 2014 2:52 pm
Subject: Keables - Someone just showed up at the house

Dear Ed,

Someone just showed up at Pamela Keables' house and apparently tried a key in the door and then left when they might have realized she was home. She couldn't get outside quickly enough to get a picture of the car, but it was a light colored Scion or Kia box car.

She also noted that it might be a new key box? Is that the case? Please advise, as we made clear – she is complying with the requisite notice and absolutely no one notified her that someone was stopping by. She did make arrangements to see another female agent this week. And it is my understanding that the policy is if an agent cannot reach her, they will contact Rich who will contact me, but that under no means will an agent make an appearance at the house without scheduling first.

This sort of appearance is the kind of thing that really makes her uncomfortable. Please advise and thank you for your cooperation.

Best regards,

TARYN M. DARLING HILL
IMPACTLAWGROUP PLLC
1325 4th AVENUE, SUITE 1400
SEATTLE, WASHINGTON 98101
P 206.792.5230
F 206.452.0655
taryn@impactlawgroup.com

This e-mail may contain confidential information that is legally privileged. The information is solely for the use of the addressee(s) named above. If you are not the intended recipient, any disclosure, copying, distribution or other use of the contents of this information is strictly prohibited. If you have received this e-mail in error, please notify us by return e-mail and delete this message. Thank you.

# Exhibit H



# LUMIN
B R O K E R S
brighter real estate & mortgage solutions

© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

### Purchase and Sale Agreement

Date: January 8, 2015

MLS Number: 669816

Property: 29905 8th Place South

City: Federal Way    State: WA    Zip: 98003

Purchase Price: $175,000

Earnest Money: $1,750

Buyer: Nick Martyn
Address: 2963 S 296th Pl
City: Federal Way    State: WA    Zip: 98003
Phone Number: (206) 235-9929
E-Mail Address: seattle160@gmail.com

Co-Buyer: _____
Address: _____
City: _____ State: _____ Zip: _____
Phone Number: _____
E-Mail Address: _____

Debtor: Noah N Keables
Case Number: 14-11665-MLB

Co-Debtor: _____
Title Holder: _____

Title Insurance: WFG National Title Company

Closing Agent: WFG National Title Company

Selling Firm: Lumin Brokers
MLS Office Number: 5063
Selling Broker: Joseph Witt
MLS LAG Number: 19033
Address: 5400 Carillon Point
City: Kirkland    State: WA    Zip: 98033
Phone Number: (206) 888-8888
E-Mail Address: Sales@LuminBrokers.com
Represents:    ☒ Buyer    ☐ Seller    ☐ Both

Listing Firm: Lumin Brokers
MLS Office Number: 5063
Listing Broker: Rich Kim
MLS LAG Number: 47547
Address: 5400 Carillon Point
City: Kirkland    State: WA    Zip: 98033
Phone Number: (206) 888-8888
E-Mail Address: Sales@LuminBrokers.com
Represents:    ☒ Seller    ☐ Both

Initials:
Buyer: _N. M._    Date: 1-8-15
Co-Buyer: _____    Date: _____
Selling Broker: _____    Date: 1/4/15

Initials:
Trustee: _EW_    Date: 1/10/15
Title Holder: _____    Date: _____
Listing Broker: _____    Date: 1/9/2015

Lumin Brokers  Sales Department
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888    toll-free: 888.88.LUMIN (888.885.8646)    fax: 888.715.1711    e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607    WA MORTGAGE BROKER LICENSE #MB-120818





# L U M I N
B R O K E R S
brighter real estate & mortgage solutions

© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

This Agreement is entered into by and between Buyer and Seller in the capacity as the United States Bankruptcy Trustee for the Case. The parties acknowledge and agree that: (1) this is a sale by the Trustee in a pending bankruptcy and is subject to approval by the Bankruptcy Court; and (2) this may be a short sale for less than the secured amount owing against the property and if so would be subject to approval by all Lienholder(s). Buyer acknowledges that both approvals will require time and effort on the part of the Trustee and Lumin Brokers, and that neither approval can be guaranteed. All terms and conditions of this Agreement may be modified by the Bankruptcy Court and/or Lienholder(s) as a condition to sale approval. The final terms as approved by the Bankruptcy Court and/or Lienholder(s) shall be subject to Buyer's approval.

Buyer agrees to purchase and Seller agrees to sell the described property pursuant to the following terms and conditions:

1.  **Property.** This Agreement is for the property commonly identified above and legally described on Exhibit A.

2.  **Seller.** Seller is the United States Bankruptcy Trustee for the Case in the Bankruptcy Court for the Western District of Washington. Seller is acting in the capacity of a Bankruptcy Trustee only and not in any personal capacity. "Seller" also includes any successor or replacement Trustee, or any Trustee appointed after conversion of the Case to a different chapter of the bankruptcy code. The role of the Bankruptcy Trustee requires Seller to obtain the highest possible price for the property, and Seller is expressly authorized to take all actions that are appropriate or required for a Bankruptcy Trustee, including seeking additional offers while this Agreement is pending.

3.  **Buyer.** "Buyer" includes Buyer and any Co-Buyer. This Agreement may not be assigned without Seller's written consent, which consent may be withheld for any reason at Seller's discretion.

4.  **Arm's Length Transaction.** The Buyer and Seller warrant and represent that this is an "arm's length" transaction and no other relationships exist among the parties outside of this transaction with the exception of typical and lawful agency relationships.

5.  **Purchase Price.** The Purchase Price shall be paid in cash at closing. Earnest Money shall be applied to the purchase price. Payment shall be made in a manner that funds are available no later than 12:00 p.m. on the closing date.

6.  **Earnest Money.** Not later than 2 business days after mutual acceptance of this Agreement, Buyer shall deposit Earnest Money in the amount identified above to be no less than 1% of the purchase price and in the form of Cash, Check or Cashier's Check. The Earnest Money shall be delivered and payable to the Closing Agent. If the Earnest Money is refunded to Buyer for any reason, the cancelation fee for the title commitment chargeable to Seller shall be deducted from the refund and paid to Seller by the Closing Agent.

7.  **Personal Property.** Except as set forth in writing, this transaction does not include any personal property in or on the Property that is not permanent attached to the property or a structure on the property. For example, appliances such as stoves, refrigerators and washing machines are not included unless they are built-in. The sale also does not include any leased personal property. It shall be Buyer's duty to identify any leased property.

Initials:

Buyer: _N. M._    Date: _1-8-15_    Initials:

Co-Buyer: _____    Date: _____    Trustee: _ETn_    Date: _1/10/15_

Selling Broker: _____    Date: _1/9/15_    Title Holder: _____    Date: _____

Listing Broker: _____    Date: _1/9/2015_

**Lumin Brokers** Sales Department
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888    toll-free: 888.88.LUMIN (888.885.8646)    fax: 888.715.1711    e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607    WA MORTGAGE BROKER LICENSE #MB-120818





## L U M I N
B R O K E R S
*brighter real estate & mortgage solutions*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

8.  **Closing Agent.** Seller may change the Closing Agent at Seller's discretion.

9.  **Closing.** Title shall be transferred by a Trustee's Quit Claim Deed, without warranty as to title. Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank. Buyer agrees to assume or pay any charges, assessments, dues, and lienable utilities not paid from proceeds of sale and agrees to reimburse Lumin Brokers at closing for any costs incurred or balances paid by Lumin Brokers for the purposes of the Buyer's inspections and/or to obtain payoff statements. The Closing Date shall be within the sooner of: (a) 30 calendar days after written approval by the Bankruptcy Court and all necessary Lienholder(s); or (b) 5 business days prior to expiration of any Lienholder approval or foreclosure date. "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. If this transaction has not closed within 120 calendar days after mutual acceptance, then Buyer may service a notice to terminate this Agreement unless Seller is able to close within 30 calendar days after receipt of such notice. Any such notice by Buyer shall be irrevocable.

10. **Possession.** Buyer shall be entitled to possession upon closing.

11. **Sale Information.** Listing and Selling Broker are authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including Buyer's credit report.

12. **FIRPTA B Tax Withholding at Closing.** The Closing Agent is instructed to prepare a certification that neither Seller nor the Debtor in the Case is a "foreign person" within the meaning of the Foreign Investment in Real Property Act. Seller agrees to sign this certification. If Seller or the Debtor is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

13. **Notices.** All notices provided for herein shall be in writing and may be delivered personally, by fax, by e-mail or mailed by registered or certified mail, return receipt requested. If delivered personally, by fax, or by e-mail, delivery shall be effective upon receipt. If mailed, delivery shall be considered effective 5 business days after deposit in such mail. The addresses to be used in connection with such correspondence and notices are those identified above or such other address as a party shall from time to time direct in writing.

14. **Computation of Time.** Any period of time set forth in this Agreement that ends on a Saturday, Sunday or federal holiday shall be extended to the next day that is not a Saturday, Sunday or federal holiday.

15. **Default and Earnest Money Forfeiture.** In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the Earnest Money deposit made by the Buyer shall be forfeited to Seller as the sole and exclusive remedy for such default. Neither party shall have the right to bring an action for specific performance.

Initials:

Buyer: __N. M.__   Date: __1-8-15__

Co-Buyer: _____   Date: _____

Selling Broker: _____   Date: __1/9/15__

Initials:

Trustee: __EM__   Date: __1/10/15__

Title Holder: _____   Date: _____

Listing Broker: _____   Date: __1/9/2015__





LUMIN
B R O K E R S
brighter real estate & mortgage solutions

© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

16. **Applicable Law, Jurisdiction and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Washington. Jurisdiction and venue for any proceeding involving this Agreement shall be in U.S. Bankruptcy Court for the Western District of Washington.

17. **Agreement to Purchase and Time Limit for Acceptance.** Buyer offers to purchase the property on the above terms and conditions. Seller has until 5:00 p.m. 5 business days after receipt of this offer to accept this offer. Acceptance is not effective until a signed copy hereof is actually received by Buyer or the office of the Selling Broker. If this offer is not so accepted, it shall lapse and the Earnest Money shall be refunded to Buyer.

18. **Counteroffers.** If a party makes a counteroffer the other party shall have until 5:00 p.m. 5 business days following receipt of the counteroffer to accept it. Acceptance is only effective by delivering a signed acceptance of the counteroffer to the other party or the office of the party's Broker.

19. **Commissions.** The Commission as published in the Northwest Multiple Listing Service may be modified by the Bankruptcy Court or the Lienholder(s) as a condition to final approval. The final commission as approved shall be divided per Northwest Multiple Listing Service Rules.

20. **Disclaimer of Warranties: As-Is Sale.** Seller is acting in the capacity of Bankruptcy Trustee and has no knowledge of or familiarity with the Property. This sale is exempt from the requirement to provide a Disclosure Statement as the Seller is a Bankruptcy Trustee. Buyer acknowledges that Buyer will not receive a Disclosure Statement. Seller has been unable to provide Listing Broker and Selling Brokers with information about the property and all information that has been provided comes from sources that cannot be verified such as county records. Buyer expressly warrants that Buyer is not relying on any statement or representation, written or oral, concerning the property made by Seller, Listing Broker or Selling Broker. Buyer agrees that Seller, Listing Broker and Selling Broker may rely on this paragraph as a complete defense to any claim concerning the condition or nature of the property, excepting only claims for intentional misrepresentation.

21. **Condemnation or Casualty.** Buyer may terminate this Agreement and obtain a refund of the Earnest Money if improvements on the Property are destroyed or materially damaged by casualty before Closing, or if condemnation proceedings are commenced against all or a material portion of the Property before Closing. Damage will be considered material if the cost of repair exceeds the lesser of $5,000 or 5% of the Purchase Price stated in this Agreement. Alternatively, Buyer may elect to proceed with Closing, in which case at Closing Seller shall assign to Buyer all claims and rights to proceeds under any property insurance policy held by Seller with respect to the Property.

22. **Licensing.** Lumin Brokers is licensed as both a real estate brokerage and a mortgage brokerage. All Bankruptcy Trustee Sale and Short Sale Facilitation shall be conducted pursuant to its status as a licensed mortgage brokerage and in compliance with RCW 19.146 and WAC 208-660.

Initials:
Buyer: _N M._   Date: _1-8-15_   Initials:
Trustee: _EM_   Date: _1/10/15_

Co-Buyer: _____   Date: _____   Title Holder: _____   Date: _____

Selling Broker: _____   Date: _1/9/15_   Listing Broker: _____   Date: _1/9/2015_

**Lumin Brokers** *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888    toll-free: 888.88.LUMIN (888.885.8546)    fax: 888.715.1711    e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607    WA MORTGAGE BROKER LICENSE #MB-120818





LUMIN
B R O K E R S
*brighter real estate & mortgage solutions*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

23. **Bankruptcy Trustee Sale and Short Sale Facilitation Fee Agreement.** In consideration for its work in facilitating the Bankruptcy Trustee Sale and Short Sale of Property, Lumin Brokers is entitled to a facilitation fee equal to 1.5% of the final gross sale Purchase Price of the Property. This fee shall be paid ☒ by the Buyer at closing ☐ from the proceeds of sale. If paid by the Buyer, this fee shall be paid in cash at closing and is in addition to the Purchase Price. If this Agreement states that the fee shall be paid from the proceeds of sale and during the course of the transaction it is determined that it actually cannot be paid in this manner, for whatever reason, the Buyer can elect to agree to pay the fee under the above described terms or Seller may give notice terminating this Agreement and refunding Buyer's Earnest Money. This fee shall be fully disclosed on any and all settlement statement(s) in association with the transaction.

24. **Bankruptcy Trustee Carve Out/Buyer Premium.** To obtain Bankruptcy Court approval of this transaction, Seller will have to show that the sale will provide a benefit to the unsecured creditors in the Case. The amount of the Bankruptcy Trustee Carve Out/Buyer's Premium shall be calculated based on the Purchase Price as follows: 25% of the first $5,000 or less, 10% of any amount in excess of $5,000 but not in excess of $50,000, 5% of any amount in excess of $50,000 but not in excess of $1,000,000, and 3% of any amounts in excess of $1,000,000; the sum of which shall be no less than $20,000_____. This fee shall be paid ☒ by the Buyer at closing ☐ from the proceeds of sale. If paid by the Buyer, the Buyer's Premium shall be paid in cash at closing and is in addition to the Purchase Price. If this Agreement states that the fee shall be paid from the proceeds of sale and during the course of the transaction it is determined that it actually cannot be paid in this manner, for whatever reason, the Buyer can elect to agree to pay the fee under the above described terms or Seller may give notice terminating this Agreement and refunding Buyer's Earnest Money. This fee shall be fully disclosed on any and all settlement statement(s) in association with the transaction.

25. **Bankruptcy Court Filing Fee.** Buyer ☒ shall ☐ shall not be responsible for paying the Bankruptcy Court Filing Fee. If paid by the buyer, the check shall be delivered to the Closing Agent not later than 2 business days after mutual acceptance of this Agreement. Buyer acknowledges and agrees to pay the sum of $176 as a non-refundable fee to the United States Bankruptcy Court for the Bankruptcy Trustee's filing of a motion to approve sale free and clear of liens. In the event that the sale closes, Buyer shall be entitled to credit at closing for the fee. In the event that this sale does not close, for whatever reason, the fee shall be considered non-refundable and shall not be credited or repaid to the Buyer. The Closing Agent is instructed to release the check 5 business days after mutual acceptance of this Agreement to the Attorney for the Bankruptcy Trustee or the Bankruptcy Trustee if an Attorney has yet to be employed. However, if the Agreement is terminated prior to the Closing Agent releasing the check, the check shall be returned to the Buyer. If the sale closes, the Bankruptcy Trustee agrees to credit the Buyer the amount of the fee from proceeds of the Bankruptcy Trustee Carve Out/Buyer's Premium at closing.

Initials:
Buyer: *N. M.*          Date: 1-8-15

Co-Buyer: _____          Date: _____

Selling Broker: _____          Date: 1/9/15

Initials:
Trustee: _____          Date: 1/10/15

Title Holder: _____          Date: _____

Listing Broker: _____          Date: 1/9/2015



# LUMIN
B R O K E R S
*brighter real estate & mortgage solutions*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

26. **Condominium.** If the Property is a condominium, then (a) the following parking and storage spaces, if any, are included in the transaction: (i) parking space no._____; and (ii) storage space no._____, and (b) Seller agrees to deliver a Resale Certificate to Buyer following receipt of all necessary Lienholder(s) and Court Approval. Buyer shall be conclusively deemed to have approved said resale certificate unless within 5 business days following receipt thereof Buyer gives notice of disapproval thereof to Seller. If Buyer disapproves the Resale Certificate, the Agreement shall terminate, except for Buyer's indemnification obligations, and the Earnest Money shall be refunded to Buyer, less any deductions authorized under this Agreement.

27. **Contingencies.** This Agreement subject to the following contingencies:

    a. **Financing.** This offer ☒ is ☐ is not contingent upon Buyer obtaining a ☐ Conventional 1st ☐ Conventional 2nd ☐ VA ☐ FHA ☐ Home Equity Line of Credit ☐ Rural Development ("RD") ☒ Other purchase loan. If this Agreement is contingent upon Buyer obtaining financing, then Buyer agrees to obtain preliminary approval, in good faith, within 5 business days after mutual acceptance of this Agreement, for a market rate loan to pay the balance of the purchase price. If preliminary approval is not received within 5 business days, this Agreement shall terminate, and Seller shall be entitled to the Earnest Money. Subject to Lienholder(s) and Bankruptcy Court approval, Seller agrees to pay up to 0_____% of the purchase price, which shall be applied to Buyer's Loan(s) and settlement costs, including, but not limited to prepaids, loan discount, loan fee, interest buy down, financing, closing, or other costs allowed by lender. If Buyer obtains an FHA, RD, or VA loan, Seller shall also pay for that portion of Buyer's Loan and settlement costs that the Lender is prohibited from collecting from Buyer under FHA/RD/VA regulations. If Buyer obtains a VA loan, Seller shall also pay the full escrow fee for the closing of this Agreement. Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

    b. **Lead Based Paint and Hazards.** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. If the Property was built before 1978, Buyer acknowledges receipt of the Lead based Paint pamphlet as required by law. Seller ☐ has ☒ has no knowledge and of lead-based paint and/or lead-based paint hazards in the housing. Seller ☐ has ☒ has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

    c. **Lienholder(s) Approval.** This Agreement is subject to approval by all parties with security interests in the Property. Buyer acknowledges such approval may be conditioned on modification of the terms of this Agreement.

| Initials: | | Initials: | |
|---|---|---|---|
| Buyer: *N. M.* | Date: *1-8-15* | Trustee: *ED* | Date: *1/10/15* |
| Co-Buyer: | Date: | Title Holder: | Date: |
| Selling Broker: | Date: *1/9/15* | Listing Broker: | Date: *1/9/2015* |

**Lumin Brokers** *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
*phone:* 206.888.8888    *toll-free:* 888.88.LUMIN (888.885.8646)    *fax:* 888.715.1711    *e-mail:* Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607    WA MORTGAGE BROKER LICENSE #MB-120818



L U M I N
B R O K E R S
brighter real estate & mortgage solutions

© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

d. **Court Approval.** All aspects of this transaction are subject to approval by the Bankruptcy Court and to any restrictions, conditions or procedures imposed by the Bankruptcy Court. Seller's obligation to close is subject to approval of the Agreement by the Bankruptcy Court and compliance with applicable bankruptcy laws, rules and regulations. Seller will verify to Seller's satisfaction that the transaction would not have adverse tax consequences for the Debtor or the Bankruptcy Estate. The Seller will apply to the Bankruptcy Court for approval of the sale set forth herein as soon as reasonably practical. Buyer acknowledges such Bankruptcy Court approval may be conditioned on modification of the terms of this Agreement. Further, if the Trustee receives a superior offer on the property prior to the Bankruptcy Court hearing, the Bankruptcy Trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the Bankruptcy Court accept the superior offer. However, if this Agreement is the first Agreement the Seller has accepted regarding the subject property, the Seller, subject to Bankruptcy Court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. Promptly after receiving a third party offer, the Seller will notify the Buyer of the existence and terms of the third party offer. Buyer may then notify the Seller in writing, within 1 business day of receipt from the Seller's written notice of the third party's offer, that the Buyer will meet or exceed those terms. Price increases must be in increments of not less than 1 percent of the original offer. If an offer is received within 1 business day of the Bankruptcy Court hearing date, the Bankruptcy Court may have the proposed purchasers submit in writing their last, highest, and best offers at the hearing to approve the sale. This provision describes the procedures that Seller is required to follow, and those procedures are not subject to modification by agreement of the parties.

e. **Buyer's Acceptance of Modifications.** Upon receipt of final approval of this Agreement, Seller shall provide Buyer with written notice of the approval and the final terms as approved. Buyer's duty to close is contingent upon Buyer's satisfaction with any modified terms of the Agreement as approved by the Lienholder(s) and Bankruptcy Court. This contingency shall be deemed satisfied unless Buyer disapproves the final approval in writing by 5:00 p.m. 5 business days after receipt of Seller's notice of final approval.

f. **Title Insurance.** This offer ☒ is ☐ is not contingent upon Buyer's review of a preliminary commitment for title insurance, together with easements, covenants, conditions and restrictions of record, which are to be obtained by Buyer, to determine that they are consistent with Buyer's intended use of the Property. Buyer shall have 5 business days from the date of mutual acceptance within which to advise Seller in writing of Buyer's disapproval thereof, stating with specificity the basis for any objections. If Buyer indicates objections to the status of title, then this Agreement shall terminate, except for Buyer's indemnification obligations, and the Earnest Money shall be refunded to Buyer, less the cancellation fee for the title commitment and other deductions authorized under this Agreement.

| | | | |
|---|---|---|---|
| Initials: Buyer: _N_  _M_ | Date: _1-8-15_ | Initials: Trustee: _EJl_ | Date: _1/10/15_ |
| Co-Buyer: _____ | Date: _____ | Title Holder: _____ | Date: _____ |
| Selling Broker: _____ | Date: _1/9/15_ | Listing Broker: _____ | Date: _1/9/2015_ |

**Lumin Brokers** *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888    toll-free: 888.88.LUMIN (888.885.8646)    fax: 888.715.1711    e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607   WA MORTGAGE BROKER LICENSE #MB-120818



LUMIN
B R O K E R S
*brighter real estate & mortgage solutions*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

g. **Inspection.** This offer ☒ is ☐ is not contingent upon Buyer's subjective satisfaction with inspections of the Property and the improvements on the Property. If this offer is contingent, the Buyer has 5 business days from the date of mutual acceptance to inspect the premises. Unless the Buyer provides Seller with notice within said 5 business days that the property is not acceptable, the inspection requirement will be deemed to be waived at 5:00 p.m. 5 business days from mutual acceptance. Notwithstanding the foregoing, if the financing institution requires an additional inspection, Seller agrees to permit such inspection. The Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefor. Buyer will return the property to its original condition after said inspection or test. The Buyer will indemnify, defend and hold the Seller, its officers, agents and attorneys harmless from all claims arising out of Buyer's inspection or testing of the property. Seller will perform no repairs as a result of Buyer's inspection, and the inspection is solely for Buyer's information and determination whether to terminate this Agreement.

This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements, oral or written, express or implied, and all negotiations or discussions of the parties, whether oral or written and may not be amended except by documents signed by both parties. There are no warranties, representations or agreements among the parties in connection with the subject matter hereof except as set forth herein.

| | |
|---|---|
| Signatures: *Nick Marty* | Signatures: *Raymond J Wood* |
| Buyer: | Trustee: |
| Date: *1-8-2015* | Date: *1/10/15* |
| Co-Buyer: | Title Holder: |
| Date: | Date: |
| Selling Broker: | Listing Broker: |
| Date: *1/9/15* | Date: *January 9, 2015* |

| | | | | |
|---|---|---|---|---|
| Initials: *N. M.* | Date: *1-8-15* | Initials: *ER* Trustee: | Date: *1/10/15* | |
| Buyer: | | | | |
| Co-Buyer: | Date: | Title Holder: | Date: | |
| Selling Broker: | Date: *1/9/15* | Listing Broker: *RS* | Date: *1/9/2015* | |

**Lumin Brokers** *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
*phone:* 206.888.8888   *toll-free:* 888.88.LUMIN (888.885.8646)   *fax:* 888.715.1711   *e-mail:* Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9607   WA MORTGAGE BROKER LICENSE #MB-120818

## EXHIBIT "A"

LOT 8 IN BLOCK 3 OF MARINE HILLS NO. 1, AS PER PLAT RECORDED IN VOLUME 56 OF PLATS, PAGES 98 AND 99, RECORDS OF KING COUNTY AUDITOR;

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

N.M. 1-8-15.

1/10/15

# Exhibit I

*Addendum to Purchase and Sale Agreement*
*Revised 6/2014*
*Page 1 of 1*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*



L U M I N
B R O K E R S
*brighter real estate & mortgage solutions*

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

### Addendum to Purchase and Sale Agreement

Date: January 20, 2015

MLS Number: 669816

Property: 29905 8th Place South

City: Federal Way   State: WA   Zip: 98003

Buyer: Nick Martyn

Co-Buyer: _____

Debtor: Noah N Keables

Co-Debtor: _____

Case Number: 14-11665-MLB

Title Holder: _____

This Addendum modifies the Purchase and Sale Agreement for the listing and property commonly identified above.

Per the Inspection, Purchase and Sale Agreement shall be terminated and Earnest Money returned to Buyer.

Initials: *N. M.*
Buyer: _____   Date: 1/20/15

Initials: *EM*
Trustee: _____   Date: 1/24/15

Co-Buyer: _____   Date: _____

Title Holder: _____   Date: _____

Selling Broker: _____   Date: _____

Listing Broker: _____   Date: _____

**Lumin Brokers** *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
*phone:* 206.888.8888   *toll-free:* 888.88.LUMIN (888.885.8646)   *fax:* 888.715.1711   *e-mail:* Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #7607   WA MORTGAGE BROKER LICENSE #MB 120818



# Exhibit J



L·U·M·I·N
B R O K E R S
*brighter real estate & mortgage solutions*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

#### Purchase and Sale Agreement

Date: April 24, 2015

MLS Number: 669816

Property: 29905 8th Place South

City: Federal Way   State: WA   Zip: 98003

Purchase Price: $189,950

Earnest Money: $2,000

Buyer: Rehab Designers LLC
Address: 879 S. 250 E., #49
City: Smithfield   State: UT   Zip: 84339
Phone Number: (360) 775-2007
E-Mail Address: rehabdesigners@gmail.com

Co-Buyer: _____
Address: _____
City: _____ State: _____ Zip: _____
Phone Number: _____
E-Mail Address: _____

Debtor: Noah N Keables
Case Number: 14-11665-MLB

Co-Debtor: _____
Title Holder: _____

Title Insurance: WFG National Title Company

Closing Agent: WFG National Title Company

Selling Firm: John L. Scott LST
MLS Office Number: 7647
Selling Broker: Kendra Fickes
MLS LAG Number: 97876
Address: 8933 Market Place, Suite H
City: Lake Stevens   State: WA   Zip: 98258
Phone Number: (425) 334-1038
E-Mail Address: lakestevens@johnlscott.com
Represents:  ☒ Buyer  ☐ Seller  ☐ Both

Listing Firm: Lumin Brokers
MLS Office Number: 5063
Listing Broker: Rich Kim
MLS LAG Number: 47547
Address: 5400 Carillon Point
City: Kirkland   State: WA   Zip: 98033
Phone Number: (206) 888-8888
E-Mail Address: Sales@LuminBrokers.com
Represents:  ☒ Seller  ☐ Both

Initials:
Buyer: _____   Date: 04/24/15
Co-Buyer: _____   Date: _____
Selling Broker: _____   Date: 04/24/15

Initials:
Trustee: _____   Date: _____
Title Holder: _____   Date: _____
Listing Broker: _____   Date: 4/24/2015

Lumin Brokers   *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
*phone:* 206.868.8888   *toll-free:* 888.88.LUMIN (888.885.8646)   *fax:* 888.715.1711   *e-mail:* Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE 99407   WA MORTGAGE BROKER LICENSE #MB-120618



© Copyright 2014
*Lumin Brokers, Inc.*
*All Rights Reserved*

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

This Agreement is entered into by and between Buyer and Seller in the capacity as the United States Bankruptcy Trustee for the Case. The parties acknowledge and agree that: (1) this is a sale by the Trustee in a pending bankruptcy and is subject to approval by the Bankruptcy Court; and (2) this may be a short sale and not in any personal amount owing against the property and if so would be subject to approval by all Lienholder(s). Buyer acknowledges that both approvals will require time and effort on the part of the Trustee and Lumin Brokers, and that neither approval can be guaranteed. All terms and conditions of this Agreement may be modified by the Bankruptcy Court and/or Lienholder(s) as a condition to sale approval. The final terms as approved by the Bankruptcy Court and/or Lienholder(s) shall be subject to Buyer's approval.

Buyer agrees to purchase and Seller agrees to sell the described property pursuant to the following terms and conditions:

1.  **Property.** This Agreement is for the property commonly identified above and legally described on Exhibit A.

2.  **Seller.** Seller is the United States Bankruptcy Trustee for the Case in the Bankruptcy Court for the Western District of Washington. Seller is acting in the capacity of a Bankruptcy Trustee only and not in any personal capacity. "Seller" also includes any successor or replacement Trustee, or any Trustee appointed after conversion of the Case to a different chapter of the bankruptcy code. The role of the Bankruptcy Trustee requires Seller to obtain the highest possible price for the property, and Seller is expressly authorized to take all actions that are appropriate or required for a Bankruptcy Trustee, including seeking additional offers while this Agreement is pending.

3.  **Buyer.** "Buyer" includes Buyer and any Co-Buyer. This Agreement may not be assigned without Seller's written consent, which consent may be withheld for any reason at Seller's discretion.

4.  **Arm's Length Transaction.** The Buyer and Seller warrant and represent that this is an "arm's length" transaction and no other relationships exist among the parties outside of this transaction with the exception of typical and lawful agency relationships.

5.  **Purchase Price.** The Purchase Price shall be paid in cash at closing. Earnest Money shall be applied to the purchase price. Payment shall be made in a manner that funds are available no later than 12:00 p.m. on the closing date.

6.  **Earnest Money.** Not later than 2 business days after mutual acceptance of this Agreement, Buyer shall deposit Earnest Money in the amount identified above to be no less than 1% of the purchase price and in the form of Cash, Check or Cashier's Check. The Earnest Money shall be delivered and payable to the Closing Agent. If the Earnest Money is refunded to Buyer for any reason, the cancelation fee for the title commitment chargeable to Seller shall be deducted from the refund and paid to Seller by the Closing Agent.

7.  **Personal Property.** Except as set forth in writing, this transaction does not include any personal property in or on the Property that is not permanent attached to the property or a structure on the property. For example, appliances such as stoves, refrigerators and washing machines are not included unless they are built-in. The sale also does not include any leased personal property. It shall be Buyer's duty to identify any leased property.

Initials:

| | | | |
|---|---|---|---|
| **Buyer:** | **Date:** 04/24/15 | **Trustee:** _____ | **Date:** _____ |
| **Co-Buyer:** _____ | **Date:** _____ | **Title Holder:** _____ | **Date:** _____ |
| **Selling Broker:** _____ | **Date:** 04/24/15 | **Listing Broker:** _____ | **Date:** 4/24/2015 |





© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

8. **Closing Agent.** Seller may change the Closing Agent at Seller's discretion.

9. **Closing.** Title shall be transferred by a Trustee's Quit Claim Deed, without warranty as to title. Buyer and Seller shall each pay one-half of the escrow fee. Seller shall pay excise tax. Taxes for the current year shall be pro-rated. Buyer shall pay for oil in the oil tank. Buyer agrees to assume or pay any charges, assessments, dues, and lienable utilities not paid from proceeds of sale and agrees to reimburse Lumin Brokers at closing for any costs incurred or balances paid by Lumin Brokers for the purposes of the Buyer's inspections and/or to obtain payoff statements. The Closing Date shall be within the sooner of: (a) 30 calendar days after written approval by the Bankruptcy Court and all necessary Lienholder(s); or (b) 5 business days prior to expiration of any Lienholder approval or foreclosure date. "Closing" means the date on which all documents are recorded and the sales proceeds are available to Seller. If this transaction has not closed within 120 calendar days after mutual acceptance, then Buyer may service a notice to terminate this Agreement unless Seller is able to close within 30 calendar days after receipt of such notice. Any such notice by Buyer shall be irrevocable.

10. **Possession.** Buyer shall be entitled to possession upon closing.

11. **Sale Information.** Listing and Selling Broker are authorized to report this Agreement (including price and all terms) to the Northwest Multiple Listing Associations or such other applicable listing association that publishes it to its members, financing institutions, appraisers and anyone else related to the sale. Buyer and Seller authorize all lenders, closing agents, appraisers, title insurance companies and other parties related to the sale, to furnish the Listing Broker and/or Selling Broker, on request, any and all information, and copies of documents concerning the status, progress and final disposition of financing, appraisal, closing, title condition, and any other matter concerning this sale, including Buyer's credit report.

12. **FIRPTA B Tax Withholding at Closing.** The Closing Agent is instructed to prepare a certification that neither Seller nor the Debtor in the Case is a "foreign person" within the meaning of the Foreign Investment in Real Property Act. Seller agrees to sign this certification. If Seller or the Debtor is a foreign person, and this transaction is not otherwise exempt from FIRPTA, Closing Agent is instructed to withhold and pay the required amount to the Internal Revenue Service.

13. **Notices.** All notices provided for herein shall be in writing and may be delivered personally, by fax, by e-mail or mailed by registered or certified mail, return receipt requested. If delivered personally, by fax, or by e-mail, delivery shall be effective upon receipt. If mailed, delivery shall be considered effective 5 business days after deposit in such mail. The addresses to be used in connection with such correspondence and notices are those identified above or such other address as a party shall from time to time direct in writing.

14. **Computation of Time.** Any period of time set forth in this Agreement that ends on a Saturday, Sunday or federal holiday shall be extended to the next day that is not a Saturday, Sunday or federal holiday.

15. **Default and Earnest Money Forfeiture.** In the event the Buyer fails, without legal excuse, to complete the purchase of the property, the Earnest Money deposit made by the Buyer shall be forfeited to Seller as the sole and exclusive remedy for such default. Neither party shall have the right to bring an action for specific performance.

| | | | |
|---|---|---|---|
| Initials: | | Initials: | |
| Buyer: | Date: 04/24/15 | Trustee: _____ | Date: _____ |
| Co-Buyer: | Date: _____ | Title Holder: _____ | Date: _____ |
| Selling Broker: | Date: 04/24/15 | Listing Broker: _____ | Date: 4/24/2015 |





### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

16. **Applicable Law, Jurisdiction and Venue.** This Agreement shall be governed by and construed in accordance with the laws of the State of Washington. Jurisdiction and venue for any proceeding involving this Agreement shall be in U.S. Bankruptcy Court for the Western District of Washington.

17. **Agreement to Purchase and Time Limit for Acceptance.** Buyer offers to purchase the property on the above terms and conditions. Seller has until 5:00 p.m. 5 business days after receipt of this offer to accept this offer. Acceptance is not effective until a signed copy hereof is actually received by Buyer or the office of the Selling Broker. If this offer is not so accepted, it shall lapse and the Earnest Money shall be refunded to Buyer.

18. **Counteroffers.** If a party makes a counteroffer the other party shall have until 5:00 p.m. 5 business days following receipt of the counteroffer to accept it. Acceptance is only effective by delivering a signed acceptance of the counteroffer to the other party or the office of the party's Broker.

19. **Commissions.** The Commission as published in the Northwest Multiple Listing Service may be modified by the Bankruptcy Court or the Lienholder(s) as a condition to final approval. The final commission as approved shall be divided per Northwest Multiple Listing Service Rules.

20. **Disclaimer of Warranties: As-Is Sale.** Seller is acting in the capacity of Bankruptcy Trustee and has no knowledge of or familiarity with the Property. This sale is exempt from the requirement to provide a Disclosure Statement as the Seller is a Bankruptcy Trustee. Buyer acknowledges that Buyer will not receive a Disclosure Statement. Seller has been unable to provide Listing Broker and Selling Brokers with information about the property and all information that has been provided comes from sources that cannot be verified such as county records. Buyer expressly warrants that Buyer is not relying on any statement or representation, written or oral, concerning the property made by Seller, Listing Broker or Selling Broker. Buyer agrees that Seller, Listing Broker and Selling Broker may rely on this paragraph as a complete defense to any claim concerning the condition or nature of the property, excepting only claims for intentional misrepresentation.

21. **Condemnation or Casualty.** Buyer may terminate this Agreement and obtain a refund of the Earnest Money if improvements on the Property are destroyed or materially damaged by casualty before Closing, or if condemnation proceedings are commenced against all or a material portion of the Property before Closing. Damage will be considered material if the cost of repair exceeds the lesser of $5,000 or 5% of the Purchase Price stated in this Agreement. Alternatively, Buyer may elect to proceed with Closing, in which case at Closing Seller shall assign to Buyer all claims and rights to proceeds under any property insurance policy held by Seller with respect to the Property.

22. **Licensing.** Lumin Brokers is licensed as both a real estate brokerage and a mortgage brokerage. All Bankruptcy Trustee Sale and Short Sale Facilitation shall be conducted pursuant to its status as a licensed mortgage brokerage and in compliance with RCW 19.146 and WAC 208-660.

| Initials: | | Initials: | |
|---|---|---|---|
| Buyer: | Date: 04/24/15 | Trustee: | Date: |
| Co-Buyer: | Date: | Title Holder: | Date: |
| Selling Broker: | Date: 04/24/15 | Listing Broker: | Date: 4/24/2015 |





© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

## RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
## UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

23. **Bankruptcy Trustee Sale and Short Sale Facilitation Fee Agreement.** In consideration for its work in facilitating the Bankruptcy Trustee Sale and Short Sale of Property, Lumin Brokers is entitled to a facilitation fee equal to 1.5% of the final gross sale Purchase Price of the Property. This fee shall be paid ☒ by the Buyer at closing ☐ from the proceeds of sale. If paid by the Buyer, this fee shall be paid in cash at closing and is in addition to the Purchase Price. If this Agreement states that the fee shall be paid from the proceeds of sale and during the course of the transaction it is determined that it actually cannot be paid in this manner, for whatever reason, the Buyer can elect to agree to pay the fee under the above described terms or Seller may give notice terminating this Agreement and refunding Buyer's Earnest Money. This fee shall be fully disclosed on any and all settlement statement(s) in association with the transaction.

24. **Bankruptcy Trustee Carve Out/Buyer Premium.** To obtain Bankruptcy Court approval of this transaction, Seller will have to show that the sale will provide a benefit to the unsecured creditors in the Case. The amount of the Bankruptcy Trustee Carve Out/Buyer's Premium shall be calculated based on the Purchase Price as follows: 25% of the first $5,000 or less. 10% of any amount in excess of $5,000 but not in excess of $50,000, 5% of any amount in excess of $50,000 but not in excess of $1,000,000, and 3% of any amounts in excess of $1,000,000; the sum of which shall be no less than $20,000_____. This fee shall be paid ☒ by the Buyer at closing ☐ from the proceeds of sale. If paid by the Buyer, the Buyer's Premium shall be paid in cash at closing and is in addition to the Purchase Price. If this Agreement states that the fee shall be paid from the proceeds of sale and during the course of the transaction it is determined that it actually cannot be paid in this manner, for whatever reason, the Buyer can elect to agree to pay the fee under the above described terms or Seller may give notice terminating this Agreement and refunding Buyer's Earnest Money. This fee shall be fully disclosed on any and all settlement statement(s) in association with the transaction.

25. **Bankruptcy Court Filing Fee.** Buyer ☒ shall ☐ shall not be responsible for paying the Bankruptcy Court Filing Fee. If paid by the buyer, the check shall be delivered to the Closing Agent not later than 2 business days after mutual acceptance of this Agreement. Buyer acknowledges and agrees to pay the sum of S176 as a non-refundable fee to the United States Bankruptcy Court for the Bankruptcy Trustee's filing of a motion to approve sale free and clear of liens. In the event that the sale closes, Buyer shall be entitled to credit at closing for the fee. In the event that this sale does not close, for whatever reason, the fee shall be considered non-refundable and shall not be credited or repaid to the Buyer. The Closing Agent is instructed to release the check 7 business days after mutual acceptance of this Agreement to the Attorney for the Bankruptcy Trustee or the Bankruptcy Trustee if an Attorney has yet to be employed. However, if the Agreement is terminated prior to the Closing Agent releasing the check, the check shall be returned to the Buyer. If the sale closes, the Bankruptcy Trustee agrees to credit the Buyer the amount of the fee from proceeds of the Bankruptcy Trustee Carve Out/Buyer's Premium at closing.

Initials:

Buyer: _____  Date: 04/24/15

Co-Buyer: _____  Date: _____

Selling Broker: _____  Date: 04/24/15

Initials:

Trustee: _____  Date: _____

Title Holder: _____  Date: _____

Listing Broker: _____  Date: 9/24/2015

Lumin Brokers  *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888   toll-free: 888.88.LUMIN (888.885.8646)   fax: 888.715.1711   e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE #9007   WA MORTGAGE BROKER LICENSE #MB-120818



## L·U·M·I·N
B R O K E R S
*brighter real estate & mortgage solutions*

© *Copyright 2014*
*Lumin Brokers, Inc.*
*All Rights Reserved*

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

26. **Condominium.** If the Property is a condominium, then (a) the following parking and storage spaces, if any, are included in the transaction: (i) parking space no._____; and (ii) storage space no._____, and (b) Seller agrees to deliver a Resale Certificate to Buyer following receipt of all necessary Lienholder(s) and Court Approval. Buyer shall be conclusively deemed to have approved said resale certificate unless within 5 business days following receipt thereof Buyer gives notice of disapproval thereof to Seller. If Buyer disapproves the Resale Certificate, the Agreement shall terminate, except for Buyer's indemnification obligations, and the Earnest Money shall be refunded to Buyer, less any deductions authorized under this Agreement.

27. **Contingencies.** This Agreement subject to the following contingencies:

    a. **Financing.** This offer ☐ is ☒ is not contingent upon Buyer obtaining a ☐ Conventional 1st ☐ Conventional 2nd ☐ VA ☐ FHA ☐ Home Equity Line of Credit ☐ Rural Development ("RD") ☐ Other purchase loan. If this Agreement is contingent upon Buyer obtaining financing, then Buyer agrees to obtain preliminary approval, in good faith, within 5 business days after mutual acceptance of this Agreement, for a market rate loan to pay the balance of the purchase price. If preliminary approval is not received within 5 business days, this Agreement shall terminate, and Seller shall be entitled to the Earnest Money. Subject to Lienholder(s) and Bankruptcy Court approval, Seller agrees to pay up to 0_____% of the purchase price, which shall be applied to Buyer's Loan(s) and settlement costs, including, but not limited to prepaids, loan discount, loan fee, interest buy down, financing, closing, or other costs allowed by lender. If Buyer obtains an FHA, RD, or VA loan, Seller shall also pay for that portion of Buyer's Loan and settlement costs that the Lender is prohibited from collecting from Buyer under FHA/RD/VA regulations. If Buyer obtains a VA loan, Seller shall also pay the full escrow fee for the closing of this Agreement. Buyer represents Buyer has sufficient funds to close this sale in accordance with this Agreement, and is not relying on any contingent source of funds or gifts unless expressly set forth elsewhere in this Agreement.

    b. **Lead Based Paint and Hazards.** Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller of any interest in residential real property is required to provide the Buyer with any information on lead-based paint hazards from risk assessments or inspections in the Seller's possession and notify the Buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase. If the Property was built before 1978, Buyer acknowledges receipt of the Lead based Paint pamphlet as required by law. Seller ☐ has ☒ has no knowledge and of lead-based paint and/or lead-based paint hazards in the housing. Seller ☐ has ☒ has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

    c. **Lienholder(s) Approval.** This Agreement is subject to approval by all parties with security interests in the Property. Buyer acknowledges such approval may be conditioned on modification of the terms of this Agreement.

| Initials: | | Initials: | |
|---|---|---|---|
| Buyer: | Date: 04/24/15 | Trustee: _____ | Date: _____ |
| Co-Buyer: _____ | Date: _____ | Title Holder: _____ | Date: _____ |
| Selling Broker: _____ | Date: 04/24/15 | Listing Broker: _____ | Date: 4/24/2015 |





© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

d. **Court Approval.** All aspects of this transaction are subject to approval by the Bankruptcy Court and to any restrictions, conditions or procedures imposed by the Bankruptcy Court. Seller's obligation to close is subject to approval of the Agreement by the Bankruptcy Court and compliance with applicable bankruptcy laws, rules and regulations. Seller will verify to Seller's satisfaction that the transaction would not have adverse tax consequences for the Debtor or the Bankruptcy Estate. The Seller will apply to the Bankruptcy Court for approval of the sale set forth herein as soon as reasonably practical. Buyer acknowledges such Bankruptcy Court approval may be conditioned on modification of the terms of this Agreement. Further, if the Trustee receives a superior offer on the property prior to the Bankruptcy Court hearing, the Bankruptcy Trustee may accept such offer contingent upon approval of the Bankruptcy Court and request that the Bankruptcy Court accept the superior offer. However, if this Agreement is the first Agreement the Seller has accepted regarding the subject property, the Seller, subject to Bankruptcy Court approval, hereby agrees that the Buyer may match the proposed purchase price of any third party offer. Promptly after receiving a third party offer, the Seller will notify the Buyer of the existence and terms of the third party offer. Buyer may then notify the Seller in writing, within 1 business day of receipt from the Seller's written notice of the third party's offer, that the Buyer will meet or exceed those terms. Price increases must be in increments of not less than 1 percent of the original offer. If an offer is received within 1 business day of the Bankruptcy Court hearing date, the Bankruptcy Court may have the proposed purchasers submit in writing their last, highest, and best offers at the hearing to approve the sale. This provision describes the procedures that Seller is required to follow, and those procedures are not subject to modification by agreement of the parties.

e. **Buyer's Acceptance of Modifications.** Upon receipt of final approval of this Agreement, Seller shall provide Buyer with written notice of the approval and the final terms as approved. Buyer's duty to close is contingent upon Buyer's satisfaction with any modified terms of the Agreement as approved by the Lienholder(s) and Bankruptcy Court. This contingency shall be deemed satisfied unless Buyer disapproves the final approval in writing by 5:00 p.m. 5 business days after receipt of Seller's notice of final approval.

f. **Title Insurance.** This offer ☒ is ☐ is not contingent upon Buyer's review of a preliminary commitment for title insurance, together with easements, covenants, conditions and restrictions of record, which are to be obtained by Buyer, to determine that they are consistent with Buyer's intended use of the Property. Buyer shall have 5 business days from the date of mutual acceptance within which to advise Seller in writing of Buyer's disapproval thereof, stating with specificity the basis for any objections. If Buyer indicates objections to the status of title, then this Agreement shall terminate, except for Buyer's indemnification obligations, and the Earnest Money shall be refunded to Buyer, less the cancellation fee for the title commitment and other deductions authorized under this Agreement.

| | | | |
|---|---|---|---|
| Initials: | | Initials: | |
| Buyer: | Date: 04/24/15 | Trustee: _____ | Date: _____ |
| Co-Buyer: _____ | Date: _____ | Title Holder: _____ | Date: _____ |
| Selling Broker: _____ | Date: 04/24/15 | Listing Broker: _____ | Date: 4/24/2015 |

**Lumin Brokers** *Sales Department*
5400 Carillon Point, Kirkland, WA 98033
phone: 206.888.8888    toll-free: 888.88.LUMIN (888.885.8646)    fax: 888.715.1711    e-mail: Sales@LuminBrokers.com
WA REAL ESTATE BROKER LICENSE 99607    WA MORTGAGE BROKER LICENSE #MB-130818






© Copyright 2014
Lumin Brokers, Inc.
All Rights Reserved

### RESIDENTIAL REAL ESTATE CHAPTER 7 BANKRUPTCY TRUSTEE SALE
### UNITED STATES BANKRUPTCY COURT FOR THE WESTERN DISTRICT OF WASHINGTON

g.  **Inspection.** This offer ☒ is ☐ is not contingent upon Buyer's subjective satisfaction with inspections of the Property and the improvements on the Property. If this offer is contingent, the Buyer has 5 business days from the date of mutual acceptance to inspect the premises. Unless the Buyer provides Seller with notice within said 5 business days that the property is not acceptable, the inspection requirement will be deemed to be waived at 5:00 p.m. 5 business days from mutual acceptance. Notwithstanding the foregoing, if the financing institution requires an additional inspection, Seller agrees to permit such inspection. The Buyer will pay all costs and fees associated with such inspections and Seller shall have no liability therefor. Buyer will return the property to its original condition after said inspection or test. The Buyer will indemnify, defend and hold the Seller, its officers, agents and attorneys harmless from all claims arising out of Buyer's inspection or testing of the property. Seller will perform no repairs as a result of Buyer's Inspection, and the inspection is solely for Buyer's information and determination whether to terminate this Agreement.

This Agreement constitutes the entire agreement among the parties with respect to the subject matter hereof and supersede all prior agreements, oral or written, express or implied, and all negotiations or discussions of the parties, whether oral or written and may not be amended except by documents signed by both parties. There are no warranties, representations or agreements among the parties in connection with the subject matter hereof except as set forth herein.

| | |
|---|---|
| Signatures: | Signatures: |
| Buyer: | Trustee: _____ |
| Date: April 24, 2015 | Date: _____ |
| Co-Buyer: | Title Holder: _____ |
| Date: _____ | Date: _____ |
| Selling Broker: | Listing Broker: _____ |
| Date: April 24, 2015 | Date: April 24, 2015 |

| | |
|---|---|
| Initials: | Initials: |
| Buyer: _____ Date: 04/24/15 | Trustee: _____ Date: _____ |
| Co-Buyer: _____ Date: _____ | Title Holder: _____ Date: _____ |
| Selling Broker: KF Date: 04/24/15 | Listing Broker: Date: 4/24/2015 |

## EXHIBIT "A"

LOT 8 IN BLOCK 3 OF MARINE HILLS NO. 1, AS PER PLAT RECORDED IN VOLUME 56 OF PLATS, PAGES 98 AND 99, RECORDS OF KING COUNTY AUDITOR;

SITUATE IN THE COUNTY OF KING, STATE OF WASHINGTON.

4/24/15

# Exhibit K

| Listing # | 1423186 | 29905 8th Place S , Federal Way 98003 | | STAT: | Cancelled | | LP: | $375,000 |
| County: | King | LT: | BLK: | CMTY: | Marine Hills | PRJ: | | |



**Type:** Residential
**AR:** 110    TAX: 5151600115
**MAP:**    GRD:    Internet: Yes
**DD:** Hwy 99, W on Dash Point Rd, RT on 9th Pl S. Left on S 299th, 1st driveway on right just past 8th Pl S.

**CDOM:** 6
**OLP:** $375,000

**FIN:**
**LD:** 04/04/2019
**XD:**
**OMD:** 04/10/2019

**LAG:** Carol Spellacy-Hinman (97557)
**FAX:**
**LO:** John L. Scott, Inc. (905)
**SOC:** 2.5    Cmnts:
**CLA:**
**CLO:**
**OTVP:** Owner
**OWN:** Undisclosed
**KEY:** Appointment, MLS Keybox
**PTS:** (253) 677-5609
**POS:** Closing
**TRM:** Cash Out, Rehab Loan
**HOD:**
**TX$:** $4,314    TXY: 2018    SNR: No    MOR:

**PH:** (253) 677-5609
**PH Type:** Cellular
**PH:** (253) 841-7000

**PH:**
**PTO:** Yes   F17: Provided
**OCC:** Undisclosed
**OPH:** (000) 000-0000

**OAD:** Federal Way, WA

**SFF:** 2,370    **SFU:** 2,700
**ASF:** 2,370    **SFS:** Realist
Community Feat:

**SPA:**   SAA:   AFH:

Right of First Refusal:   No

| BR: 5 | BDA: | BTH: 2.50 | FBT: 1 | QBT: 2 | HBT: 0 | FP: 2 | TOF: |

| | G | L | M | U | | | |
|---|---|---|---|---|---|---|---|
| BR: | | 2 | 0 | 3 | ACR: 0.325 | | LSF: 14,166 |
| FUL: | 0 | 0 | 0 | 1 | VEW: Territorial | | LSZ: |
| 3/4: | 0 | 1 | 1 | 0 | WFT: | | WFG: |
| 1/2: | 0 | 0 | 0 | 0 | LTV: | | |
| FP: | 1 | 1 | | | LDE: Paved Street, Secluded | | POL: |
| | | | | | SIT: | | |

| Utility Room | Lower | GR: Carport-Attached | GAR: 2 | STY: 14 - Split Entry |
| Dining Room | Upper | BLD:    YBT: 1962 | NC: | FND: Slab |
| Entry | Main | BDI: Built On Lot | ARC: | |
| Kit w Eat Spc | Upper | BDC: Fixer | RF: Composition | |
| Living Room | Upper | EXT: Brick, Wood | BSM: Daylight | |
| Master Bedroom | Upper | MHM:    MHS: | MHN: | |
| Rec Room | Lower | | | |

**ENS:** Electric, Natural Gas
**WHT:**    LSD:
**FEA:** Bath Off Master
**APS:** Dishwasher, Dryer, Garbage Disposal, Range/Oven, Refrigerator, Washer

**HTC:** Forced Air
**FLS:** Hardwood, Slate, Vinyl, Wall to Wall Carpet

| WAS: | Public | WAC: | Lakehaven | SD: | Federal Way | EL: | Nautilus Elem |
| SWC: | septic | POC: | PSE | JH: | Sacajawea Jnr High | SH: | Federal Way Snr High |
| Green Cert: | | | | BUS: | | BUS RTE: | |
| Zoning Jur:: | | Zoning Code:: | | 3rd Party Aprvl Req: | Short Sale | Bank/REO Owned Y/N: | No |
| Built Green: | | HERS Score: | | EPS Score: | | LEED: | |
| NWMLS Cert: | | Cnstrct Mthds: | | | | | |

Agent Only Remarks:  . Ticor Title - Sara Tingley Short sale subject to lien holder approval. Buyer responsible for septic inspection. Home being sold AS IS. Owner undisclosed.

Marketing Remarks:  **Investors, flippers, creative minds - bring your tool belt! ok...you better bring a ladder, carpet, and paint brushes too. This home is in need of vision and tender loving care.  Located in beautiful Marine Hills where homes are selling at 450K PLUS - what a great ROI!  5 bedrooms, 2 wood burning fireplaces and huge open downstairs living space all on a large lot. Shown by appointment only.**